UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DALE GRIFFITHS, )
)
Plaintiff )
)
v. ) Civil No. 05-125-P-H
)
ALFRED CICHON, et al., )
)
Defendants )

***Recommended Decision on Motion for Summary Judgment***

Dale Griffiths, formerly in the custody of the York County Jail, has filed a 42 U.S.C. § 1983 action against multiple defendants claiming that his Eighth Amendment rights were violated during his stay at the jail. Griffiths claims that personnel at the jail responsible for assuring that he got adequate medical care were deliberately indifferent to his medical needs when Griffiths complained of needing treatment for broken/ abscessed teeth and a broken hand.[1] Defendants Philip Cote, John Angis, and Peter Gallagher, the county jail nonmedical defendants, have filed a motion for summary judgment (Docket No. 44) to which Griffiths has not responded. For the following reasons I recommend that the Court grant the motion.

Two United States Supreme Court cases frame the constitutional standard for a deliberate indifference claim: Estelle v. Gamble, 429 U.S. 97 (1976) and Farmer v. Brennan, 511 U.S. 825 (1994). Estelle provided that the Eighth Amendment protection places upon the government an "obligation to provide medical care for those whom it is

[1] In Paragraphs 22 and 23 Griffiths also references an order for an x-ray of his spine that was never completed but, as I read the complaint allegations, Griffiths is not complaining of any injury from this omission.

punishing by incarceration." 429 U.S. at 103. The Court observed: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." id.

In Farmer the Court directed its attention to articulating the standard a plaintiff must meet to hold a prison official liable for Eighth Amendment claims of the type framed by Griffiths. It identified two prongs. First, the deprivation alleged must be "objectively 'sufficiently serious.'" 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, under Farmer, the defendant must have a culpable state of mind, which means that the defendant was deliberate in his indifference to the inmate's health or safety. Id. If the course of treatment amounts, at the most, to no more than negligence or medical malpractice there is no constitutional violation. See Daniels v. Williams, 474 U.S. 327, 335-36 (1986) (noting that 42 U.S.C. § 1983 provides a right of action for civil rights violations and cannot be used to sue correctional officials for negligence).

***The Summary Judgment Standard***

The defendants are entitled to a favorable summary judgment order only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If the defendants meet their burden this court will grant the summary judgment motion unless Griffiths's presentation generates a genuine issue as to the presence or absence of material fact or facts; that is, that the evidence in the record is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements v.

Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). In evaluating whether a genuine issue is raised, the Court must view all facts in the light most favorable to Griffiths and give him the benefit of all reasonable inferences. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

However, because Griffiths has failed to place a single one of the defendants' facts in dispute I deem the properly supported facts as admitted, see Faas v. Washington County, 260 F. Supp. 2d 198, 201 (D. Me. 2003). Griffiths's pro se status does not relieve him of his duty to respond, see Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y 2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment"), nor alter the Court's obligation to fairly apply the rules governing summary judgment proceedings, see Fed. R. Civ. P. 56; Dist. Me. Loc. R. Civ. P. 56.

***Undisputed Material Facts from the Summary Judgment Record***

Dale Griffiths entered the custody of the York County Jail on November 1, 2004. (Defs.' SMF ¶ 1.). At all times relevant to Griffiths's incarceration, extending from November 1, 2004, to January 10, 2006, medical treatment was provided to inmates housed in the York County Jail. (Id. ¶ 2.) In order to provide medical treatment to York County Jail inmates, York County contracts with Allied Resources for Correctional Health to provide medical services. (Id. ¶ 3.) Decisions as to diagnosis of injuries and illnesses, and the appropriateness of treatment are decisions within the purview of the York County Jail's medical provider. (Id. ¶ 4.) While incarcerated in the York County Jail, Griffiths sought treatment regarding complaints of back pain, neck pain, toothache, wrist pain and pains in the hand. (Id. ¶ 5.)

Other than the statement of facts pertaining to the concern that Griffiths was feigning his pain complaints in hopes of getting unnecessary pain medication, these defendants offer scant factual fodder on the question of whether the underlying dental problem (the toothache) was adequately addressed. They state that York County Jail Policy F-314 provides that the Jail has made arrangements to provide emergency dental care to inmates at an outside dental office (Defs.' SMF ¶ 24); York County Jail uses transport officers to shuttle inmates to various destinations, including scheduled medical or dental appointments (id. ¶ 26); and transport officers do not decide whether an inmate goes or does not go to a scheduled medical or dental appointment and if they are told they need to take an inmate somewhere they would follow the instruction (id. ¶ 27).

According to the defendants' unopposed statement of fact, with respect to Griffiths's hand fracture, the medical provider's progress notes reveal that on December 17, 2004, Griffiths was seen complaining about pain related to his teeth. He then asked a Jail staff member to use the telephone, and when this was refused to him, Griffiths punched the wall two times. In that the incident occurred at 9:30 on a Friday evening, arrangements were made to have Griffiths's hand x-rayed the following Monday. (Id. ¶ 6.)

On December 20, 2004, Griffiths's hand was x-rayed and determined to be fractured. (Id. ¶ 7.) An appointment was made for Griffiths to see an outside physician on December 22, but had to be rescheduled due to a shortage of correctional staff and no one being available to drive Griffiths to his appointment. (Id. ¶ 8.) The appointment was rescheduled for December 27. (Id. ¶ 9.) Griffiths's follow-up appointment to the December 27 appointment was scheduled for February 5, 2005, but had to be rescheduled

to February 16, 2005. (Id. ¶ 10.) Jail medical staff learned at that time that Griffiths had not been wearing his prescribed splint, and when he was confronted with this, Griffiths claimed that the splint was hurting his hand. He was told that the purpose of the sprint is to help realign the bones. (Id. ¶ 11.)[2]

Griffiths was seen by an orthopedic surgeon Frank Goudreau, D.O. on December 27, 2004. (Id. ¶ 14.) Griffiths was subsequently seen on January 18, 2005, and again on March 7, 2005. (Id. ¶ 15.) On March 7, the provider noted that Griffiths was told "that once he is released to seek evaluation from his hand surgeon." Further, "he is provided with a note today stating that he should see his hand surgeon at some point, if possible, while he is incarcerated, so that he may receive at least some treatment for this, either splinting with or without pain control." (Id. ¶ 16.)

In regard to the medical services provided to inmates housed at the Jail, York County Jail Policy F-310 sets forth that the Jail's medical services include, at a minimum, non-emergency services, and emergency medical attention. (Id. ¶ 22.) York County Jail Policy F-311 provides the Jail Physician is on-call twenty-four hours a day to respond to emergency situations occurring in the Jail. (Id. ¶ 23.) With respect to dental care, York County Jail Policy F-314 provides that the Jail has made arrangements to provide emergency dental care to inmates at an outside dental office. (Id. ¶ 24.) Decision making with respect to medical care is governed by Policy F-310 which provides: "No jail employee will diagnose or treat an inmate's illness. Medication and treatment will be

2 According to the defendants, Griffiths again punched a wall around April 10, 2005, and was seen by medical on April 12, 2005, with swelling again in his right hand. (Id. ¶ 12.) On May 1, 2005, a piece of metal was found in Griffiths's cell, and he had cut approximately one inch off the top of his right hand. There are subsequent reports on May 2 and May 4 which indicated that Griffiths appeared to have been attempting to infect his self-inflicted wound. (Id. ¶ 13.) Although I understand why the defendants were so thorough in accounting for Griffiths's medical history at the jail, these statements are not material to the resolution of this motion.

administered only as directed by the Jail Physician's Standard Operating Procedure." (Id. ¶ 25.)

York County Jail uses transport officers to shuttle inmates to various destinations, including scheduled medical or dental appointments. (Id. ¶ 26.) Transport officers do not decide whether an inmate goes or doesn't go to a scheduled medical or dental appointment. If they are told they need to take an inmate somewhere they would follow the instruction. (Id. ¶ 27.) The only time York County Jail transport officers may not take the inmate to a scheduled medical or dental appointment would be where the Jail is short handed in terms of staff or if inmates have to go to Court, and all the transport staff and vehicles were necessary to get the inmates to the scheduled Court hearings. In the absence of a medical emergency, the Jail would give priority to getting the inmates to Court, and would make alternate arrangements or reschedule medical appointments when the transport resources were diverted. (Id. ¶ 28.)

On January 10, 2006, Dale Griffiths entered the Maine State Prison system, and has not been in the custody of the York County Jail since that time. (Id. ¶ 29.)

***Dental Care Complaint allegations***

In his complaint allegations Griffiths asserts that he "was left untreated with a broken tooth and exposed nerves causing great pain and difficulty eating for thirty[-] eight days." (Compl. Statement of Claim ¶ 1.) He alleges that he was left with a severely abscessed tooth keeping him awake in extreme pain and making him very sick due to swallowing the infection that was being produced by the abscess. (Id. ¶ 2.) He contends that the medical staff was aware of this condition and the abscess went untreated for ten days. (Id.) Griffiths explains that on November 20, 2004, he submitted a medical

request slip during the morning medication pass which stated that he had lost a filling and had exposed nerves that were causing him a lot of discomfort. (Id. ¶ 10.) He asserts that he asked to be seen by a dentist as soon as possible. (Id.) The next day he submitted another slip during the morning medication pass that stated that he was in a lot of pain from the tooth. (Id. ¶ 11.) On November 30 and various other dates, Griffiths represents, he submitted repeat medical slips, indicating that he was vomiting acidy, bloody bile and that his stomach was not tolerating the Tylenol and Ibuprofen. (Id. ¶ 14.) . On December 2 Griffiths submitted a medical request form in which he reflected that, gauging by the response that he had received from Physician Assistant Alfred Cichon in response to his grievance on this subject, Cichon was exhibiting a complete disregard for Griffiths's needs and that it was very unethical to leave him in pain. (Id. ¶ 16.) On December 17, 2004, Griffiths came out of his cell for an evening medication pass and he told Nurse Bentley that he had been up for three days and nights in extreme pain from his teeth. (Id. ¶ 18.) Griffiths asked to be taken to the hospital. (Id.) Bentley looked in Griffiths's mouth and told him that he had abscesses on the left and right side of his lower jaw with visible puss pockets. (Id.) Bentley told Griffiths that she would call Cichon. (Id.)

While there was some intervening treatment on his hand, Griffiths's complaint allegation represents that it was not until December 28, 2004, that he was taken to the dentist and one broken and abscessed tooth was removed. (Id. ¶ 29.) The other broken tooth was not removed until May 25, 2005. (Id. ¶ 31.) Griffiths complains that he had to wait over a month to have any dental treatment for his broken teeth and exposed nerves, fifteen days of which was after the abscess was visible to Bentley. (Id. ¶ 32.)

***The Hand Injury Complaint Allegations***

Griffiths states that after being refused a request to call his wife by Sergeant Seamons, he punched his hand into a steel door twice and declared that they would have to take him to the hospital for the broken hand. (Id. ¶ 19.) Within fifteen minutes Bentley returned to Griffiths's cell with an ice pack and three Ibuprofen and told Griffiths that Cichon would not approve an immediate hospital run and that his hand would be x-rayed at the jail on Monday (December 20). (Id. ¶ 21.) He explains that he was given an ice pack and three Ibuprofen by Nurse Bentley and was told that Physician Assistant Alfred Cichon would not approve a transport to the hospital but that x-rays would be taken on Monday, December 20. (Id. ¶ 21.) The next day, on December 18, Griffiths was seen by Roland Morin who ordered x-rays and prescribed one Vicodin three times a day. (Id. ¶ 22.) On December 20 an x-ray was taken of Griffiths's hand. (Id. ¶ 23.) That evening, Griffiths was informed that the x-ray showed a fracture. (Id. ¶23 B.)

Griffiths complains that he did not know until later that a December 22, 2004, off-site orthopedic appointment for his hand was canceled after the medical department was informed by Gallagher that there was no staff available to take him to the appointment. (Id. ¶ 24.) On December 23, during the evening medical pass, Griffiths alleges that he asked for an ace bandage or splint to stabilize the hand which was painful and the request was denied because he was in a maximum security unit and in this unit these items were not allowed. (Id. ¶ 25.) At this point Griffiths showed the nurse his hand and asked why his fingers were folding under each other at odd angles and the nurse told him that it might be due to the way he was holding his hand. (Id.)

On December 27, 2004, Griffiths was taken to an outside medical provider and seen by a doctor. X-rays were taken and the doctor explained that he had a separated fracture that would require surgery, a collapsed wrist, an old fracture, and arthritis. (Id. ¶ 26.) The doctor asked Griffiths when he had injured his hand and Griffiths told him that ten days had elapsed since his injury. (Id. ¶ 27.) According to Griffiths's complaint, the doctor told him that if Griffiths had seen the doctor sooner, before bone spurs had formed, things would have been a lot less complicated. (Id.) Griffiths was fitted with a half-cast and ace bandage and was told that the cast was not going to correct the fracture but it would provide support and ease the pain. (Id.) Griffiths was returned to the prison and maximum security with the half-cast and the ace bandage. (Id. ¶ 28.)

***Discussion***

The defendants assert that there is insufficient evidence of a municipal policy and custom to hold these three defendants liable in their official capacity (id. at 6-7). They are correct; Griffiths has not created a triable issue on this score. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Acevedo-Garcia v. Monroig, 351 F.3d 547, 553 n.1 (1st Cir. 2003); compare Long v. County of Los Angeles, 442 F.3d 1178, 1185-90 (9th Cir. 2006).

The defendants further assert that they cannot be held accountable in their personal capacity as supervisors because there is no evidence of an affirmative link between these three individuals and the constitutional violation (id. at 7-8). Specifically, they argue:

> Here there is no evidence linking Cote, Angis or Gallagher to any claim. The Plaintiff's claim is asserted against these Defendants based upon his belief that these Defendants were "in charge of" or "responsible for." He has not pled the direct involvement of Cote, Angis, or Gallagher,

> nor can he demonstrate their involvement. Moreover, the Plaintiff's claims involve medical decisions regarding treatment and the prescription of medications, decisions by their nature and by policy these Defendants do not involvement in. (sic)

(Id. at 8.)

As the First Circuit stated in Whitfield v. Melendez-Rivera:

> Like municipal liability, supervisory liability cannot be predicated on a respondeat superior theory. Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir.1999). Supervisors may only be held liable under § 1983 on the basis of their own acts or omissions. Id. Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. See Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir.1999). Absent direct participation, a supervisor may only be held liable where "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively link [ed] ' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence ... amounting to deliberate indifference.' " Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir.1995) (quoting Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902-03 (1st Cir.1988)).

431 F.3d 1, 14 (1st Cir. 2005).

While I can conceive of a factual record that could support Griffiths's claim that one or more of these defendants had supervisory liability apropos an inadequate response to Griffiths's dental care (despite their conclusory protestations that they have no such responsibility), Griffiths has failed to generate any record evidence affirmatively linking them as supervisors to the alleged unconstitutional treatment. Based on this summary judgment effort, these defendants are not entitled to summary judgment on the basis of their alternative argument that there was no underlying constitutional violation vis-à-vis the adequacy of efforts to treat the dental condition. (See Mot. Summ. J. at 8-10.) I am confronted with allegations of an unexplained failure to provide any treatment at all for a

severe dental abscess for over thirty days. I cannot say as a matter of law that such neglect of an apparently serious medical condition cannot ever amount to a constitutional violation. These defendants should prevail because of Griffiths's failure to link them to the alleged violation, not because the failure to provide dental treatment does not make out a constitutional violation as a matter of law.

As with the claims pertaining to his dental treatment, by failing to respond to this motion for summary judgment, Griffiths has failed to present record evidence in support of his hand-injury complaint allegations. On the record generated by these defendants,[3] it seems there was no underlying constitutional violation relating to the hand injury. Furthermore, there is no record support for the proposition that there is a policy or custom that is the driving force behind the alleged constitutionally deficient treatment of his hand and, thus, these defendants cannot be held liable in their official capacities. See Pembaur, 475 U.S. 469; Acevedo-Garcia, 351 F.3d at 553 n.1.[4] With respect to individual capacity, supervisory responsibility, the only one of these defendants linked in any manner to the ten-day delay in obtaining outside treatment of Griffiths's hand injury is Gallagher, but that link is in Griffiths's complaint and not the summary judgment record (see Defs.' SMF ¶¶ 8, 9 & 10; Vitiello Aff. ¶¶ 10-12). The record generated by the defendants, and unopposed by Griffiths, simply does not generate a triable issue as to whether or not

[3] There is another pending motion for summary judgment by a separate set of defendants and any conclusion in this recommended decision about what the record does or does not support would not apply to an analysis of that summary judgment record.

[4] The sole fact that transport of prisoners to off-site medical appointments might be delayed when court-related transportation needs arise does not make the policy unconstitutional.

Gallagher was "affirmatively linked" to any allegedly unconstitutional medical attention to his hand injury, see Whitfield, 431 F.3d at 14.[5]

## *Conclusion*

For the above stated reasons, I recommend that the Court **GRANT** this motion for summary judgment (Docket No. 44).

---

[5] These defendants also state that according to the Jail's medical provider, Griffiths filed numerous complaints and requests for medical treatment, all with the goal of obtaining prescription drugs. (Id. ¶ 17.) In this regard, Cichon answered a grievance from Mr. Griffiths on April 21, 2005, Exhibit A, which states: "Mr. Griffiths is a highly manipulative and disruptive individual who has been determined to exhibit 'drug seeking behavior.' He is a known and self admitted substance abuser, who is resistant to treatment." (Id. ¶ 18.) Likewise, Cichon authored a report on November 16, 2004, which indicates, with regard to Griffiths:

> This is a fellow who presents for revisit for medication reviews indicating that he wants to have his medications returned to their original amount. The patient also indicates that he believes that he should have additional medication because of his 'pain'. The patient was presented to the jail with a significant use of medication, taking up to 12 to 14 Percocet per day. These medications were being taken reportedly for significant back injuries and for injuries to his hand and foot. Patient has had fracture and subsequent surgical intervention; however, the most recent of these was over nine months ago.
> * * *
> I have strong clinical suspicion that the complaint of symptoms is significantly exaggerated and does not warrant narcotic intervention. In fact his community physician has indicated that he believes the same. He was going to refer the patient to a pain clinic anticipating that the pain clinic would decrease his medication.

(Id. ¶ 19.)

On February 8, 2005, Cichon noted:

> Mr. Griffiths again presents requesting medications, looking for Vicodin because of his 'chronic discomfort'. The patient has multiple complaints of posttraumatic and post-surgical arthritis. He was being managed by community physicians, however. Since this is incarceration, it has been discerned that he in fact was violating his narcotics contract and he returns with concerns that his medication is inadequate.

(Id. ¶ 20.)

Ultimately, Cichon made the determination with regards to Mr. Griffiths's request for prescription medications, "that unless there is some proof of a condition that requires that Mr. Griffiths be provided potentially addictive pain medications, I will refrain from prescribing them to him because of his history of drug addiction, drug abuse, and drug-seeking behavior." (Id. ¶ 21.)

As I read Griffiths's complaint his allegations concerning appropriate pain medication strictly concern Cichon; he faults Cichon for failing to give him appropriate medication and refusing to make arrangements for Griffiths's surgery. (Compl. Statement of Claim ¶ 36.) If Griffiths was hoping to hold these defendants liable for Cichon's medication decisions, Griffiths's failure to oppose this motion for summary judgment is fatal to such claims as there is no record evidence that would justify sending these three defendants to trial on a supervisory capacity or policy and custom theory relating to the pain-medication decisions.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 13, 2006