UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DALE GRIFFITHS, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>ALFRED CICHON, et al., )<br>)<br>Defendants ) | Civil No. 05-125-P-H |

**REPORT OF FINAL PRETRIAL CONFERENCE
AND RECOMMENDED DECISION ON COMPLAINT**

A final pretrial conference of the court and counsel was held by telephone on Wednesday, October 11, 2006, commencing at 10:00 a.m. and concluding at 10:15 A.M.

Presiding:     Margaret J. Kravchuk, U.S. Magistrate Judge

Appearances: Plaintiff Dale Griffiths appearing pro se

For Defendant Roland Morin:  David J. VanDyke, Esq.

Plaintiff did not file a pretrial memorandum as required by the Local Rules. This is a civil rights action brought by Dale Griffiths while an inmate of the York County Jail against various individuals. Roland Morin, a nurse practitioner at the jail, is the only defendant remaining in this action. Plaintiff claims that Defendant Morin failed to provide adequate medical care to him and violated his civil rights thereby. Griffiths originally named numerous individuals, including both medical personnel and county jail officials, as defendants. Those defendants, represented by other counsel, filed timely motions for summary judgment; Griffiths never responded to the motions and summary judgment was granted to all defendants, except for Morin. (See Docket Nos. 47, 48, 49.)

Griffiths' original complaint concerned both a failure of medical treatment for an infected tooth and a failure to provide medical care for a broken hand. Defendant Morin is implicated only in the hand injury according to the existing factual record and the allegations in Morin's complaint. Additionally, during the pretrial conference Griffiths orally confirmed to me that his case against Morin related solely to the hand injury. The substance of those allegations are set forth in my recommended decision at Docket No.47, relating to the motion filed by the other medical defendants:

> With respect to his hand, in his complaint Griffiths admits that he intentionally punched his fist twice into a steel door on December 17, 2004, in an effort to force the jail to transport him to the hospital (where presumably he hoped for relief from his dental problems). (Compl. Statement of Claim ¶ 19.) The next day, on December 18, Griffiths was seen by Roland Morin who ordered x-rays and prescribed one Vicodin three times a day. (Id. ¶ 22.) On December 20 an x-ray was taken of Griffiths's hand. (Id. ¶ 23.) That evening, Griffiths was informed that the x-ray showed a fracture. (Id. ¶23 B.)
>
> Griffiths complains that he did not know until later that a December 22, 2004, offsite orthopedic appointment for his hand was canceled after the medical department was informed by Gallagher that there was no staff available to take him to the appointment. (Id. ¶ 24.) On December 23, during the evening medical pass, Griffiths alleges that he asked for an ace bandage or splint to stabilize the hand which was painful and the request was denied because he was in a maximum security unit and in this unit these items were not allowed. (Id. ¶ 25.) At this point Griffiths showed the nurse his hand and asked why his fingers were folding under each other at odd angles and the nurse told him that it might be due to the way he was holding his hand. (Id.)
>
> On December 27, 2004, Griffiths was taken to an outside medical provider and seen by a doctor. X-rays were taken and the doctor explained that he had a separated fracture that would require surgery, a collapsed wrist, an old fracture, and arthritis. (Id. ¶ 26.) The doctor asked Griffiths when he had injured his hand and Griffiths told him that ten days had elapsed since his injury. (Id. ¶ 27.) According to Griffiths's complaint, the doctor told him that if Griffiths had seen the doctor sooner, before bone spurs had formed, things would have been a lot less complicated. (Id.) Griffiths was fitted with a half-cast and ace bandage and was told that the cast was not going to correct the fracture but it would provide support and ease the pain. (Id.) Griffiths was returned to the prison and maximum security with the half-cast and the ace bandage. (Id. ¶ 28.) Griffiths's follow-up appointment with the doctor was canceled and rescheduled due to Gallagher's

> transport-staff shortage. (Id. ¶ 30.) Griffiths complains that it is "unjustified" that he would have to wait ten days for treatment of his hand fracture. (Id. ¶ 33.) He states that his hand is disfigured, he now needs surgery (id. ¶ 34), he could not use his hand for six weeks, and after over six months the injury still causes him great pain when writing or undertaking other activities (id. ¶ 35).

(Recommended Decision at 6-7.) Aside from Morin's involvement in ordering an x-ray and prescribing pain medication there are absolutely no allegations involving his conduct.

    **2.** **Discovery.** A discovery cut-off date of May 16, 2006, has been previously established herein. The deadline for filing dispositive motions was June 6, 2006.

    **3.** **Pending Motions.** At the time of the final pretrial conference, the following motions were pending:

    a. Docket No. 51: Defendant Morin's Motion to Extend Time to file dispositive motions to October 23, 2006, filed on September 25, 2006, more than three months after the date for filing such a motion had passed. Attorney Van Dyke entered his appearance in this case on May 5, 2006, a month prior to the deadline. His explanation for the tardy filing and failure to even seek an extension at an earlier date is totally inadequate. (See Docket No. 55) Based on the record before me, I can find neither excusable neglect nor good cause for granting such an untimely extension. I therefore **DENY** the motion.

    b. Docket No. 52: Defendant Morin's Motion in Limine filed September 25, 2006. A response is due October 16, 2006. This motion seeks to exclude from evidence any expert opinions regarding standard of care or any other medical issue as the plaintiff has never properly designated any medical expert witness.

    **4.** **Recommended Decision on Complaint.** The Court finds itself in a difficult position. Griffiths has failed to respond to a series of court orders, including most recently failing to file a pretrial memorandum in anticipation of this conference. Nor has Griffiths complied with the Local Rules in terms of filing his opposition to earlier motions. His failure to respond to the earlier motions for summary judgment means that little remains of his original case. I cannot prepare a meaningful pretrial order to govern a trial against Ronald Morin wherein the only evidence will be that Morin

ordered an x-ray and prescribed some pain medication. On the other hand Morin has failed to file a timely dispositive motion and a <u>sua sponte</u> dismissal of the action would be an unusual course of action, although not unheard of in the context of prisoner litigation.[1]

To the extent Griffiths is attempting to sue Morin for medical malpractice, his failure to designate an expert witness regarding Morin's deviation from the accepted standard care is apt to prove fatal to that claim. In any event, Griffiths indicated during the telephone conference that his claim related solely to a constitutional violation.

The First Circuit has very recently reiterated just how high the bar is when a plaintiff seeks to bring an Eighth Amendment deliberate indifference claim involving medical care:

> In <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court established that an Eighth Amendment claim of "cruel and unusual punishment" based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Id.</u> at 105-06; <u>see also</u> <u>Miranda v. Munoz</u>, 770 F.2d 255, 259 (1st Cir.1985).
>
> > The obvious case would be a denial of needed medical treatment in order to punish the inmate. But deliberate indifference may also reside in 'wanton' decisions to deny or delay care, where the action is recklessness, 'not in the tort law sense but in the

---

[1] Congress has provided:
Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court <u>shall</u> dismiss the case at any time if the court determines that—
**(A)** the allegation of poverty is untrue; or
**(B)** the action or appeal—
    **(i)** is frivolous or malicious;
    **(ii)** fails to state a claim on which relief may be granted; or
    **(iii)** seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C.A. § 1915(e)(2) (emphasis added). Griffiths claim, as isolated against Morin, falls within subsection (ii) as explained below.

> appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'
>
> Watson v. Caton, 984 F.2d 537, 540 (1st Cir.1993) (internal citations omitted).
>
> "Deliberate indifference" thus defines a narrow band of conduct in this setting. In Layne v. Vinzant, 657 F.2d 468 (1st Cir.1981), we stated that even a jury finding of "treatment substandard, even to the point of malpractice, is not the issue." Id. at 474. Importantly for our analysis of Feeney's claim, we held in Ferranti v. Moran, 618 F.2d 888 (1st Cir.1980), that when a plaintiff's "allegations simply reflect a disagreement on the appropriate course of treatment[, s]uch a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation." Id. at 891; see also Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir.1991). The care provided must have been "'so inadequate as to shock the conscience.'" Torraco, 923 F.2d at 235 (quoting Sires v. Berman, 834 F.2d 9, 13 (1st Cir.1987)).

Feeney v. Correctional Medical Services, Inc., __ F.3d __, __, 2006 WL 2797636, *2-3 (1st Cir. Oct. 2, 2006).

Measured by the Feeney standard, Griffiths' claim against Morin fails to state a constitutional violation. There is no allegation that Morin had anything to do with the ten-day delay between the date the x-ray was ordered and when Griffiths was finally taken to the outside orthopedic surgeon. The complaint suggests the delay was attributable to the "medical department" but not to Morin specifically. Griffiths does not allege that Morin made an independent decision to deny him medical care. There is no factual support for an allegation of "deliberate indifference" on Morin's part.

Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) Griffith's constitutional claim against Morin should be dismissed for failure to state a claim and the court should decline to exercise supplemental jurisdiction over any included state law claims against Morin. Griffiths's opportunity to file an objection to this recommended decision gives

him notice of the court's action and an opportunity to be heard before dismissal of the remainder of his original complaint.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated October 12, 2006

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge